# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIVIDAD GUTIERREZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VANTIA PROPERTIES, LLC, et al.,<br><br>　　　　Defendants.<br>_____ / | Case No.  1:13-cv-00642-LJO-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED**<br><br>(Doc. No. 40)<br><br>**OBJECTIONS DUE: 21 DAYS** |

## I. INTRODUCTION

On March 31, 2014, Plaintiff Natividad Gutierrez ("Plaintiff") filed a motion for default judgment against Defendant Vantia Properties, LLC ("Vantia").  No opposition to Plaintiff's motion was filed.  The Court reviewed the motion and supporting documentation and determined that the matter was suitable for decision without oral argument pursuant to Local Rule 230(g); as such, the hearing on the motion was vacated.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED in the amount of $12,157.05.

## II. FACTUAL BACKGROUND

On May 2, 2013, Plaintiff filed a complaint pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; the California Unruh Act, California Civil

Code § 51 *et seq.*; and California Health & Safety Code §§ 19955, 19959. (Doc. 1.) The complaint seeks an award of statutory damages, prejudgment interest on the damages, costs of suit, attorney's fees, and declaratory and injunctive relief. (Doc. 1.) Plaintiff alleges that he requires the use of a wheelchair when traveling in public (Doc. 1, ¶ 8), and the property that is the subject of this suit, Taqueria San Juan (the "Property"), presents numerous architectural barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility (Doc. 1, ¶ 10).

Defendant Vantia Properties, LLC ("Vantia") was served with the complaint on May 20, 2013, and failed to file a responsive pleading. (*See* Doc. 10). Vantia's default was entered by the Clerk of Court on June 27, 2013. (Doc. 12.)

Defendants Nicolas Vasquez ("N. Vasquez") and Juan Vasquez ("J. Vasquez") were each served with the complaint on May 26, 2013, but neither Defendant filed a responsive pleading. (Docs. 8, 9.) The Clerk of Court entered default against N. Vasquez and J. Vasquez on June 27, 2013. (Docs. 14, 15.)

Plaintiff filed a motion for default judgment against all three defendants on August 15, 2013. (Doc. 16.) N. Vasquez and J. Vasquez filed a Notice of Appearance on August 27, 2013, and subsequently settled with Plaintiff. (Doc. 19.) Plaintiff filed a Notice of Settlement with N. Vasquez and J. Vasquez on February 14, 2014, and voluntarily dismissed both defendants from this action on March 7, 2014. (Docs. 37, 38.)

On March 31, 2014, Plaintiff filed a motion for default judgment against Vantia, which is currently pending before the Court. (Doc. 40.)

**III. DISCUSSION**

**A.   Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven

discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include the following: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.     Analysis**

    **1.     The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

        **a.     Prejudice to Plaintiff if Default Judgment is not Granted**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until Vantia participates and makes an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

        **b.     Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief

3

sought. *See Danning v.Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to remove "barriers . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011) (en banc). Where a barrier's removal is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

According to the complaint, Plaintiff "requires the use of a wheelchair when traveling about in public," and he is thus "physically disabled" as defined by the applicable California and federal laws. (Doc. 1, ¶ 8.) As a restaurant, the Property is a facility of public accommodation and functions in a non-residential capacity whose activity affects commerce. (Doc. 1, ¶ 9.) Plaintiff alleges that Vantia owns, operates, or leases the Property; thus, it is allegedly liable for the Property's compliance with the ADA. (Doc. 1, ¶ 7.)

Plaintiff visited the Property and alleges that Defendants failed to provide barrier-free access to the Property in the following ways: (1) inadequately marking accessible parking space in the parking lot, requiring Plaintiff to park in a faintly marked designated accessible space, with no

4

signs directing him to the space; (2) failing to maintain the parking lot, making it difficult for Plaintiff to transfer between his vehicle and his wheelchair and to travel across the parking lot; (3) failing to demarcate an accessible route to the entrance of the Facility, located in the front of the building along the street, forcing Plaintiff to travel a "long distance" across the parking lot, down the driveway and around the building, to reach the entrance.; (4) the front door of the Facility was too heavy, making it difficult for Plaintiff to open; and (5) no accessible restroom was provided. (Doc. 1, ¶¶ 10-11.) Plaintiff alleges that the removal of these architectural barriers is readily achievable, or alternatively, the services could have been made available through alternative methods that were readily achievable. (Doc. 1, ¶ 19.) As these facts are taken as true regarding Vantia following its entry of default, Plaintiff has met his burden of stating a prima facie Title III discrimination claim.

Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal Civ. Code § 51(b). Additionally, no business establishment of any kind whatsoever shall discriminate against any person in California on account of disability. Cal. Civ. Code § 51.5. The Unruh Act also incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f). Here, Plaintiff alleges that Vantia denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability. (Doc. 1, ¶¶ 33-40.) Further, because Plaintiff's complaint properly alleges a prima facie claim under the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Civil Rights Act claim.

California Health and Safety Code § 19955 mandates that all public accommodations constructed in California comply with the requirements of Government Code § 4450. Pursuant to Section 4450, "all buildings, structures, sidewalks, curbs, and related facilities, construed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities." Cal. Gov. Code § 4450(a). Additionally, non-exempt public accommodations constructed prior to July 1, 1970, and later

altered or structurally repaired, are required to comply with the same requirements of the California Health and Safety Code. Cal. Health & Safety Code § 19959.

For purposes of pleading his claim, Plaintiff incorporates his allegations regarding the barriers he encountered at the Property, listed above. (Doc. 1, ¶ 41.) Further, Plaintiff alleges that the Property is a public accommodation "constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the [Property] was not exempt under the Health and Safety Code § 19956." (Doc. 1, ¶ 44.) Although largely boilerplate, this claim is sufficiently pled. *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364, at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment).

While Plaintiff's allegations in his complaint are generic as to all defendants, and Vantia is the only defendant remaining, defendants are jointly and severally liable for ADA violations in any of these capacities. *See Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000). Accordingly, Vantia alone may be held liable for Plaintiff's counsel's time, costs, and statutory damages. The complaint sufficiently states Plaintiff's claim under Title III of the ADA, the Unruh Civil Rights Act, and California Health and Safety Code § 19955, and there appears to be merit to the substantive allegations. As such, these *Eitel* factors weigh in favor of default judgment.

### c.   Sum of Money at Stake

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment in the amount of $12,981.86, which includes attorney's fees and costs. This is not a relatively large sum of money, nor does it appear unreasonable in light of the allegations in the complaint.

#### d. Dispute Concerning Material Facts

With regard to this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Vantia has submitted nothing to contradict the well-pled allegations in the complaint. Accordingly, this factor favors entry of default judgment.

#### e. Default due to Excusable Neglect

Vantia failed to file a responsive pleading or oppose Plaintiff's motion for default judgment. The Court has no evidence before it establishing that Vantia's failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

#### f. Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

### 2. Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

#### a. Declaratory Relief

Plaintiff's complaint and motion for default judgment seek declaratory relief in order to trigger Plaintiff's entitlement to damages under California law. Plaintiff asserts that, by virtue of Vantia's default, the allegations of the complaint are deemed true and constitute a sufficient ground for the Court to find that Vantia has violated Title III of the ADA. Based on the allegations in the complaint and Vantia's default, Plaintiff is entitled to a declaration that, as it pertains to the Property, Vantia is in violation of Title III of the ADA.

#### b. Statutory Damages

The Unruh Civil Rights Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation. Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a

7

maximum of three times the actual damages but no less than $4,000 for each instance of discrimination"). A violation of the ADA constitutes a violation of the Unruh Act. As such, Plaintiff asserts that he is entitled to $4,000 in statutory damages pursuant to the California Civil Code § 52(a).

Plaintiff has sufficiently alleged facts indicating that he visited the Property and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property. (Doc. 1, ¶¶ 10-11.) Thus, Plaintiff is entitled to an award of $4,000 in statutory damages.

### c. Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion. California Civil Code § 55 also provides for attorney's fees and costs for obtaining injunctive relief; section 54.3 provides fees for recovery of damages, both to enforce the "full and equal access" guaranteed to disabled persons by Section 54.1.

Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate. *Ferland v. Conrad Credit Corp*, 244 F.3d 1145, 1146-48 (9th Cir. 2001). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See D'Emanuele [v. Montgomery Ward & Co.*, *Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990)]; *Hensley* [*v. Eckerhart*, 461 U.S. 424,] 461 (1983). The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n. 9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to

8

adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

Here, Plaintiff seeks an award of $8,586.86 for total billable time spent on the case as well as $1,395 for costs and litigation expenses. (Doc. 40-1, 9-10.) Specifically, Plaintiff requests $5,409 for 18.03 hours of work expended by Ms. Tanya Moore, Esq., at an hourly rate of $300. Plaintiff also seeks $1,148.85 for 9.99 hours spent by paralegal Marejka Sacks at an hourly rate of $115. Plaintiff also seeks $2,029.20 for the work of paralegal Whitney Law, consisting of 8.72 hours at an hourly rate of $85, plus 11.2 hours at an hourly rate of $115.

**(i)     Ms. Moore's Time Expended and Hourly Rate**

Regarding the number of hours expended by Ms. Moore, the Court finds that the amounts claimed by Plaintiff for certain tasks are reasonable; however, some of the time expended is unreasonable, duplicative, or inadequately documented and should be reduced.

Numerous entries throughout the billing statement reflect time spent reviewing communications from the Court:

| Date | Activity | Time Spent |
| --- | --- | --- |
| 05/02/2013 | Communication from court: Civil Cover Sheet | 0.05 (3 minutes) |
| 05/02/2013 | Communication from court: Complaint Asserting Denial of Right Access Under Americans with Disabilities Act | 0.10 (6 minutes) |
| 05/03/2013 | Communication from court: Civil New Case Documents Issued | 0.33 (19.8 minutes) |
| 06/26/2013 | Communication from court: Request for Entry of Default | 0.10 (6 minutes) |
| 06/27/2013 | Communication from court: Request for Entry of Default | 0.12 (7.2 minutes) |

| Date | Description | Time |
|---|---|---|
| 06/27/2013 | Communication from court: Clerk's Entry of Default | 0.19 (11.4 minutes) |
| 06/27/2013 | Communication from court: Clerk's Entry of Default | 0.28 (16.8 minutes) |
| 06/27/2013 | Communication from court: Clerk's Entry of Default | 0.18 (10.8 minutes) |
| 08/15/2013 | Communication from court: Reviewed Minute Order from court for hearing set 9/25, updated calendar, checked for conflicts | 0.20 (12 minutes) |
| 08/15/2013 | Communication from court: Reviewed Court minute order re: scheduling conference | 0.10 (6 minutes) |
| 08/15/2013 | Communication from court: Reviewed MDJ to ensure accuracy and all docs were filed properly | 0.30 (18 minutes) |
| 08/27/2013 | Communication from court: Reviewed Notice re: appearance by J. Vasquez, N. Vasquez | 0.30 (18 minutes) |
| 09/17/2013 | Communication from court: Request For continuance for MDJ | 0.10 (6 minutes) |
| 09/17/2013 | Communication from court: Certificate of service | 0.10 (6 minutes) |
| 09/19/2013 | Communication from court: Reviewed order granting continuance | 0.10 (6 minutes) |
| 11/06/2013 | Communication from court: Reviewed Minute Order from proceedings | 0.10 (6 minutes) |
| 11/09/2013 | Communication from court: Order Continuing Hearing on Plaintiff's MDJ | 0.30 (18 minutes) |
| 11/15/2013 | Communication from court: Order Granting Plaintiff's request to appear telephonically at hearing | 0.20 (12 minutes) |
| 11/18/2013 | Communication from court: Notice of Order | 0.10 (6 minutes) |

| Date | Description | Time |
|---|---|---|
| 11/18/2013 | Communication from court: Status Report | 0.10 (6 minutes) |
| 11/18/2013 | Communication from court: Service by Mail | 0.10 (6 minutes) |
| 11/19/2013 | Communication from court: Minute Order re: Service by Mail | 0.10 (6 minutes) |
| 11/20/2013 | Communication from court: Minute order – Service on J Vasquez | 0.10 (6 minutes) |
| 11/20/2013 | Communication from court: Minute Order: status report on settlement between both Vasquez and Plaintiff | 0.20 (12 minutes) |
| 11/21/2013 | Communication from court: Reviewed memo from LV re: Comm from court and instructions re: response | 0.30 (18 minutes) |
| 11/22/2013 | Communication from court: Service by mail on Vasquez Defs | 0.10 (6 minutes) |
| 11/22/2013 | Communication from court: Minutes for proceedings before Judge | 0.10 (6 minutes) |
| 12/17/2013 | Communication from court: Order Allowing add'l time for Defs. | 0.10 (6 minutes) |
| 01/30/2014 | Communication from court: Notice to Appear by Vasquez | 0.20 (12 minutes) |
| 02/03/2014 | Communication from court: TM time Reviewed communications by Court | 0.20 (12 minutes) |
| 02/13/2014 | Communication from court: minutes from Proceedings before Judge | 0.10 (6 minutes) |
| 02/14/2014 | Communication from court: Notice of Settlement | 0.10 (6 minutes) |
| 02/18/2014 | Communication from court: Service by Mail, Order served on Vazquez | 0.10 (6 minutes) |
| 02/18/2014 | Communication from court: Order After Settlement | 0.30 (18 minutes) |

| | | |
|---|---|---|
| 02/19/2014 | Communication from court: Minute Order, Plaintiff to file motion for DJ or Vol'y Dismiss | 0.10 (6 minutes) |
| 03/07/2014 | Communication from court: Notice of Vol Dismissal of Defendants N and J Vazquez | 0.10 (6 minutes) |
| 03/07/2014 | Communication from court: Order re: Notice of Voluntary Dismissal | 0.10 (6 minutes) |
| (Doc. 40-3, 5-19.) | **Total:** | **5.75 hours (345 min)** |

When considering the time entries in total, the amount of time spent essentially reviewing the docket is unreasonable, particularly given the substance of the communications and docket entries.

On May 3, 2013, the only documents issued by the court were the new case documents and summons. (Docs. 4, 5, 6, 7.) These documents are issued in all civil cases in this district and are very similar, even among different judges. Given the routine nature of these orders, counsel familiar with this district's new civil case documents, as counsel is here, would require only a minimal amount of time to review these documents. Ms. Moore, however, spent 0.33 hours (19.8 minutes) reviewing these documents. (Doc. 40-3, 5.) Further, paralegal Ms. Law also processed these documents for which she billed .60 hours. (Doc. 40-6, p. 1.) In light of the routine nature of the documents reviewed, Ms. Moore's time spent on May 3, 2013, is excessive and should not be awarded. *See Hensley*, 461 U.S. at 433-34 (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary).

On June 27, 2013, Ms. Moore recorded 0.77 hours (46.2 minutes) reviewing communications from the Court. (Doc. 40-2, 4 (four separate time entries).) On that date, Plaintiff filed a request for entry of default, and three one-page orders were issued indicating the Clerk of the Court had entered the default of Defendants Vantia, J. Vasquez, and N. Vasquez. (Docs. 12, 13, 14, 15.) Ms. Moore's time of 46.2 minutes for review of a document she prepared and filed, and for reviewing the resulting one-page court orders, is excessive.

12

On August 15, 2013, Ms. Moore spent 0.20 hours (12 minutes) reviewing a three-line minute order setting the time of the hearing on Plaintiff's Motion for Default Judgment. (Doc. 40-3, p. 6; *see also*, Doc. 17.) On August 15, 2013, Ms. Moore also spent 0.10 hours (6 minutes) reviewing a second three-line minute order continuing a scheduling conference. (Doc. 18.)

On August 27, 2013, Ms. Moore spent .30 hours (18 minutes) reviewing a seven-line Notice of Appearance from J. Vasquez and N. Vasquez. (Doc. 40-3, 8; Doc. 19.) On September 17, 2013, Ms. Moore spent 0.10 hours (6 minutes) reviewing a "communication from court" consisting of the Certificate of Service filed by her office. (Doc. 40-3, 8; Doc. 21.)

On November 15, 2013, Ms. Moore spent .20 hours (12 minutes) reviewing a "communication from court," granting Plaintiff's request to appear telephonically at a hearing on Plaintiff's motion for default judgment. (Doc. 40-3, 9.) As Ms. Moore's office had prepared the Order, Ms. Moore's expenditure of twelve minutes of time reviewing the signed Order from the Court is excessive. (Doc. 28.)

On November 18, 2013, Ms. Moore spent .10 hours (6 minutes) reviewing "communication from court" consisting of another Certificate of Service filed by her office. (Doc. 40-3, 9; Doc. 26.)

On November 21, 2013, the Court issued a minute order from a status conference in which Ms. Moore participated. The November 21, 2013, billing entry reflects Ms. Moore spent .30 hours (18 minutes) reviewing "Communication from Court: Reviewed memo from LV re: communication form court and instructions re: response." Eighteen minutes of time was not necessary for review of a six-sentence minute order from a conference in which Ms. Moore had participated. Additionally, the Court has no indication who LV is or what response to the scheduling conference may have been necessary. *See Hensley*, 461 U.S. at 433-34 (fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of the hours worked).

On February 18, 2014, Ms. Moore spent .30 hours (18 minutes) reviewing a one-page Order After Settlement issued by Judge O'Neill. (Doc. 36.)

Reviewing the above-referenced documents should have taken only a few minutes, particularly considering Ms. Moore's office had already billed for preparing the documents; the subsequent billing to review the documents that had been filed and recording that time as "communication from the court" is excessive. While reviewing automatic emails showing the occurrence of docket activity and reviewing short Court orders does take time, billing judgment must be exercised in the accumulation of billing entries of this type. Based on the activities recorded in reviewing routine, simple documents, the Court finds that only 3 hours (180 minutes) of the time expended on these activities is reasonable; thus, a reduction of 2.75 hours is warranted.

With regard to the hourly rate to be charged, courts generally calculate these rates according to the prevailing market rates in the relevant legal community. *Blum*, 465 U.S. at 895. In general, courts utilize the rates of attorneys practicing in the forum district, here, the Eastern District of California, Fresno. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (1993); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991). The fee applicant bears the burden of producing sufficient evidence that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.

Plaintiff asserts that Ms. Moore specializes in representing plaintiffs in disability actions, and Ms. Moore's declaration states she has filed and successfully prosecuted over 400 civil rights actions, she has handled numerous litigation matters through trial, and has been practicing law for twelve years. (Doc. 40-2, ¶¶ 7-8.) She usually bills at $350 per hour, but has reduced her hourly rate in this case to $300. (Doc. 40-1, 8.) Ms. Moore asserts an hourly rate of $300 has been found reasonable for Ms. Moore's work in other ADA cases in the Fresno division of this District, and should be awarded here. (Doc. 40-1, 8.) The Court finds that $300 is a reasonable hourly rate for work performed by Ms. Moore. Accordingly, it is recommended that Plaintiff be awarded the sum of $4,584 for work performed by Ms. Moore.[1]

---

[1] This amount consists of the amount of time billed by Ms. Moore (18.03 hours) minus the court recommended reduction in time spent reviewing the docket (2.75 hours), for an adjusted time of 15.28 hours multiplied by Ms. Moore's hourly rate of $300 per hour.

### (ii)  Paralegal Rate and Time Expended

Plaintiff seeks compensation for 9.99 hours expended by paralegal Marejka Sacks at $115 per hour, and 19.92 hours expended by paralegal Whitney Law (comprised of two rates: 8.72 hours at $85 per hour, and 11.2 hours at $115 per hour).  S*ee* Docs. 40-4, 40-6.  Plaintiff cites *Gutierrez v. Onanion*, 1:11-cv-00579-SMS, 2012 WL 1868441, at *2 (E.D. Cal. May 22, 2012) for the proposition that courts in this district have determined that $115 per hour to be a reasonable rate.  This district has found reasonable $115 per hour for work performed by a paralegal in ADA cases. *See id; Moore v. Ruiz*, 1:11-cv-2159-LJO-GSA, 2012 WL 3778874, at *6 (E.D. Cal. Aug. 31, 2012).  The Court finds the hours expended by the paralegals reasonable.  Thus, the Court recommends Plaintiff be awarded 21.19 hours (9.99 hours for Ms. Sacks and 11.2 hours for Ms. Law) of paralegal time expended at an hourly rate of $115 ($2,436.85), plus 8.72 hours of paralegal time expended at an hourly rate of $85 ($741.20) for Ms. Law, for a total of $3,178.05.

### (iii)  Litigation Expenses and Costs

Plaintiff seeks to recover costs in the amount of $1,395.  In Section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the prevailing party other than the United States to recover a reasonable attorney's fee, including litigation expenses and costs.  42 U.S.C. § 12205.  The statutory provisions of the ADA provide direct authority for the award of expert witness fees as litigation expenses under the ADA. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002).  The costs here include expenses for the court filing fee, costs of service, and a fee for a site inspection of the Property, which are compensable pursuant to 42 U.S.C. § 12205 and *Lovell*.  303 F.3d at 1058.  Plaintiff's litigation expenses and costs are compensable and should be awarded.

### d.  Joint and Several Liability

In general, under both federal and California state law, liability among defendants for a successful plaintiff's attorney's fees is generally joint and several. *Turner v. Dist. of Columbia Bd. of Elections & Ethics*, 354 F.3d 890 (D.C. Cir. 2004) (joint and several liability for attorney's fees awarded under 42 U.S.C. § 1988 for all non-fractionable claims against defendants); *Cal. Trout, Inc. v. Super. Ct.*, 218 Cal. App. 3d 187, 212 (1990) (awarding attorney's fees under California

Code of Civil Procedure § 1021.5, noting that liability for the fees among defendants was joint and several); *Corder v. Gates*, 947 F.2d 374 (district court did not err in refusing to apportion attorney's fees among defendants in awarding fees under Section 1988).

Under the ADA, prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The express terms of the ADA hold a landlord and a tenant liable for noncompliance with the Act. *Botosan*, 216 F.3d at 832. In *Botosan*, the appellate court noted that the legislative history of the ADA supports this construction of the statute:

> This [provision] makes it clear that the owner of the building which houses the public accommodation, as well as the owner or operator of the public accommodation itself, has obligations under this Act. For example, if an office building contains a doctor's office, both the owner of the building and the doctor's office are required to make readily achievable alterations. It simply makes no practical sense to require the individual public accommodation, a doctor's office for example, to make readily achievable changes to the public accommodation without requiring the owner to make readily achievable changes to the primary entrance to the building.
>
> Similarly, a doorman or guard to an office building containing public accommodations would be required, if requested, to show a person who is blind to the elevator or to write a note to a person who is deaf regarding the floor number of a particular office.
>
> The amendment also clarifies that entities which lease public accommodations are covered by the requirements of this title.

*Botosan*, 216 F.3d at 832 (quoting H.R.Rep. No. 101-485(III), at 55-56 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 478-79).

Here, although the complaint does not specify whether Vantia, N. Vasquez, and J. Vasquez were co-tenants, co-owners, or in a landlord-tenant relationship, in all of those cases, liability for failure to comply with the ADA is joint and several.[2] Even to the extent Defendants had an agreement to allocate responsibility for compliance with the lease – of which there is no evidence

---

[2] The complaint alleges that "Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation." (Doc. 1, ¶ 7.)

16

before the Court – each Defendant still remains responsible for ADA compliance. *Botosan*, 216 F.3d at 832-34. As Defendants are jointly and severally liable for damages and fees awarded under the ADA, it is appropriate to award damages and attorney's fees against Defendant Vantia despite that Defendants N. Vasquez and J. Vasquez have settled separately with Plaintiff. Furthermore, no apportionment of the attorney's fees has been sought as Vantia has defaulted and has failed to oppose Plaintiff's motion for default judgment.

Additionally, courts have awarded attorney's fees against one defendant for plaintiff's counsel's time spent litigating against another defendant. *See Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010) (citing *Californians for Responsible Toxic Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 979 (1989)). Thus, in recommending an award of attorney's fees against Vantia, the Court finds no basis to apportion the fees for Plaintiff's counsel's work spent litigating against Vantia only.

Finally, Plaintiff has requested that the damages and fees against Vantia be offset by the $1,000 settlement amount paid by N. Vasquez and J. Vasquez. Such an offset is appropriate where there is joint and several liability, and an offset of $1,000 is recommended. *See generally Velez v. Roche*, 335 F. Supp. 2d 1022, 1042-43 (N.D. Cal. 2004) (offset may be awarded where settlement and award against which offset is sought were (1) for the same injury and (2) the injury is indivisible such that there is joint and several liability among the settling and non-settling defendants) (citations omitted).

### e. Conclusion

For the reasons set forth above, the Court recommends Plaintiff be awarded the following fees:

| Professional | Hourly Rate | Hours | Total |
|---|---|---|---|
| Ms. Tanya Moore | $300 | 15.28 | $4,584.00 |
| Ms. Marejka Sacks | $115 | 9.99 | $1,148.85 |
| Ms. Whitney Law | $85 | 8.72 | $ 741.20 |
| | $115 | 11.2 | $1,288.00 |
| | | **Total Fees** | $7,762.05 |

Additionally, Plaintiff should be awarded $1,395 for the costs of suit, and $4,000 in statutory damages. Plaintiff also requests that Vantia be granted an offset in the amount of $1,000. Thus, the total award of damages, fees, and costs (including the offset) recommended is $12,157.05.

### IV. RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment should be GRANTED;

2. Judgment be entered in Plaintiff's favor and against Defendant Vantia Properties, LLC;

3. Defendant Vantia be found and declared to be in violation of Title III of the Americans with Disabilities Act;

4. Plaintiff be awarded statutory damages in the amount of $4,000;

5. Plaintiff be awarded attorney's fees in the amount of $4,584 (15.28 hours x $300 per hour), paralegal fees in the amount of $3,178.05 (21.19 hours x $115 per hour, plus 8.72 hours x $85 per hour), and costs of suit in the amount of $1,395; and

6. Defendant Vantia be awarded a $1,000 offset for the settlement amount paid by Defendants N. Vasquez and J. Vasquez.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified

///

///

time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 20, 2014**                              **/s/ Sheila K. Oberto**
                                                                 UNITED STATES MAGISTRATE JUDGE